The final case this morning is 13-1019, IN RE VIBRYNT. I've reserved five minutes for rebuttals and I guess it's good afternoon at this point. The issue here is just a 2D refusal and the marks set issue are Prevail, which is my client's application for bariatric surgical implants, and Peak Prevail, which is surgical implants made of artificial material. Our position is that the board made a mistake in refusing and affirming the refusal to register because of the improper weight afforded to the sophistication of the customers. The declarations that we provided to the doctors really outline the substantial effort that is made to purchase and select an implant, a surgical implant. It goes through three or four levels. It takes several months in order to make that purchase. And the case... The board kind of gave you credit for that, right? It did. It did, but then it improperly weighed that factor and it weighted against what it found to be similar marks and we have a strong issue with that because the board took a position that Prevail was the dominant feature of the Peak Prevail mark. And there was no evidence to support that other than just isolating that word. It ignored that Peak was the lead word for that and that Peak had a particular connotation. But yours is a sophisticated market. It's not something that most people go to Walmart to buy. I would hope not, yeah. So the word Peak doesn't simply refer to looking underneath something. Peak refers to a particular plasticized chemical of some kind, right? It could appear in either of these products. So you then sort of... Wouldn't you naturally shift your focus to the second word at that point? No, I wouldn't agree with that because there's no evidence that Peak is used in connection with bariatric surgery or abdominal surgery. It is used primarily as supported by the declarations that we submitted of the two orthopedic doctors with orthopedic implants. And the reason why it's used, I guess, I mean, I'm not technical at all, it's polyether ether ketone. And it makes it so the device itself is accepted by the body and then it makes the device stronger and stabilized in the body. So then that orthopedic implant does not move in the body. So a physician seeing the word Peak is going to know if... And they're being solicited specifically by a vendor. The vendor calls the doctor and says, hey, I've got a product for you and let's talk about it. And here's the clinical data that goes with it. So the vendor knows who they're going to, which is an orthopedic surgeon, because that's his market. And the orthopedic surgeon, when he sees Peak, is like, yeah, this would be... Well, if your product is really that much different, why did you focus on the word Prevail? Because Prevail doesn't communicate anything to the sophisticated market in which you're operating. That's what puzzles me. Well, our mark is Prevail by itself, not Peak Prevail. Peak Prevail is the sighted mark. Right. And there's a different connotation in terms of that. So why Prevail? Why would you pick a mark that's already clearly established in the field? Well, then you bring me to another point that the office and the board have never really reconciled. Why is it that they say they cited two marks against this? One was Prevail for dental implants that was registered before Peak Prevail. And the office allowed Peak Prevail with a broader identification of goods to be registered in spite of the registration for Prevail for dental implants. So there was...and we submitted evidence of third-party use, obviously, that's in the record. But the office has not ever explained why it can allow the registration of Prevail for dental implants and the registration of Peak Prevail for surgical implants. And the dental implant registration, which is still valid, was registered first. So it undercuts their argument that somehow the surgical implants encompass everything under the sun. What's the legal element that what you just stated as a kind of common sense point goes to? I mean, is it a defense that you can raise that maybe their mark shouldn't have been approved? Well, it goes to the issue of what's the nature of the goods of the site of registration. Obviously, when the office looked at the mark and got the application, they had evidence of use that supported the use of Peak Prevail. And they could see that it was orthopedic implants. It wasn't any surgical implant under the sun. So the argument goes to what is the scope of those goods? What are the goods for Peak Prevail? But doesn't their registration, their registration is not limited to orthopedic implants, right? No, it's not. So part of what's maybe even the central thing going on here is that, well, today, when the doctors, when the marketers are marketing their product, they're calling orthopedists, maybe 12 months from now, they will have figured out a use of this very same material to doctors that, you know, to whatever the specialty is that your bariatric product goes to. And that you're not allowed to bump up against something that they're not currently doing, but that's within their registration. That's really sort of supposition, though, because it seems to me that this Peak material has a very specific application. And it's not something that's ever going to be used with an abdominal implant. My recollection, at least, is that the declarations that spoke about that did not go that far. They simply said this is either the current use or the main use or the one that we're familiar with, but didn't say it's not, in fact, used elsewhere and couldn't be used elsewhere. Well, the declarations of the orthopedics are the ones that you're referring to, the two orthopedic declarations. They said, look, when I see Peak, I know that that's a reference to orthopedic devices. You would expect an orthopedic to say that, wouldn't you? Right. No, absolutely. But it also says there's no overlap between a bariatric surgery and orthopedic surgery. I mean, they are different specialties. And, again, I go back... Yeah, but isn't the point... I mean, isn't the board telling us the standard they use? Is there not to look at how it's actually used? Aren't they required to look at the registered mark? And the registered mark here was for surgical implants and not limited to orthopedic implants? That is a rule, but they have two exceptions to it. They have the exception in the TRAC mobile case, which is applied in other cases, and in the Edward Life Sciences case. And one in the TRAC mobile case is if there's some uncertainty as to what the goods are, then extrinsic evidence can be submitted. And the Life Science case, the Edward Life Science case, and that was an opposition proceeding, says if the goods are technical in nature and only basic information has been provided, you can submit extrinsic evidence. The board has taken the position, and they often take the position, well, that doesn't apply in an ex parte application, but that's not true. I mean, it's the same statute that interprets whether a mark is entitled to registration. And there's a case, the Agra case that is cited, or actually it's Packard Press versus Hewlett Packard, says that the decisions in an inter-party proceeding can apply to an ex parte, and it makes sense. And Edward Life Sciences relies upon TRAC mobile to make its decisions. So it's not an absolute line up this idea of goods. You lose if the mark is too close, in the board's opinion, and the goods of the site of registration encompass those goods of the application, that are stated in the application. There's two exceptions, and the board refused to apply them. Can I ask, is there either something in the governing law, or I guess, and something in anything the board said, that gets at the question, why in the world, of all the possible marks you could choose, do we have to give you any real leeway to choose one that is, at a minimum, so similar to an existing one? Well, there's no rule on that, but I mean, keep in mind, trademarks are just, I mean, in the United States, they're just English language. You're going to have common words used by various parties. But there are a lot of those words. Yeah, but I mean, there was a lot of uses of prevail in the medical industry, and specifically for surgical instruments. I mean, look at the other-sided mark that went through a fair, the dental implants mark went through prosecution for a fair amount of time, until, for whatever reason, the examiner just withdrew it. So why is it, again, I go back, why can there be a registration for prevail for dental implants, and a registration for peak prevail for surgical implants, but not a registration for prevail for abdominal implants? It makes absolutely no sense. Yeah, but that's the same problem as to whether we can go back and say to them, you shouldn't have done it, guys, but they've done it. So the question I think that's really puzzling me is, if I were a surgeon in your field, would the word prevail tell me something useful about your product that you couldn't communicate through some term other than one that's so similar to what's already in the marketplace? That's what's puzzling me. Well, I think, you know, again, I go back to- Unless you want to confuse people, I don't know why you'd pick that same name. Well, again, I mean, lots of people use prevail in the medical industry. It's not, you're ineffectively saying that the owner of peak prevail has a monopoly on the word prevail for any kind of implant, and I don't think that's an accurate statement of the law. And so we are entitled to select a mark that has some appeal to a bariatric surgeon, which is that you can prevail for the fact that you can't lose weight. That's a big part of the mark, and the market for that. So they were entitled to select that mark on that. And again, there's other people using prevail in the medical industry. Would you normally advertise to the public, or would you normally advertise only to the surgeons who use your product? Just the surgeons, because like we described in those declarations, in the seven declarations of the abdominal surgeons, is that it goes through like a four-step process. The vendor gives a call to the doctor, says, hey, I got this new product, it's called prevail. Great, set up a meeting, come over, let's talk about it, bring your clinical data with you. Okay, doctor likes it, I'll take a sample. Then he puts it in the patient, assuming the patient's willing, of course. The vendor will often be present during the surgery, and then they have discussions afterwards. And in between that time, before the sample is inserted in the patient, the doctor does his clinical research, looks at medical research, talks to other doctors in the hospital. And before he can even buy it, he has to get approval from the insurance carrier, he's got to get approval from the hospital staff that we're willing to put this in, and then he negotiates with the vendor. So this is a very long, drawn-out process. It's not something that you absolutely know who you're buying the product from in this scenario. Why don't we hear from the government? All right, thank you. Good afternoon, Your Honors. May it please the Court? I think you've hit on the real nub of the case here, which is what the Board did with respect to giving full effect to the cited registration. And what it did was it followed this Court's directive in Ray Dixie Restaurants and said, we are going to give it the full scope of what it says. And it said surgical implants, which is a very simple term. Well, why did that end up bumping up on dental implants, which are also surgical implants? That really does not have any bearing on this case, Your Honor. And I think this was touched upon a little earlier. When the Board looks at a particular application and registration, the Board is not basically binding that particular application. It's not bound by what was done in a previous application. Now, we want the Board to be consistent where possible, but where something is going to come up against a prohibition for registration, like 2D in this case, we want to make sure that the Board does do that when it sees that sort of a situation. So whether that should or should not have been registered previously is not really material to this case. Is there an alternative way where the other side could have challenged the peak prevail mark in order to be allowed to then seek her mark? There absolutely is a way. There are actually two ways. One way is kind of a collaborative way where the applicant can approach the owner of the prior registration and say, would you consent to my registration for these particular goods or services? And that is usually considered very strong evidence that there's going to be no likelihood of confusion under this Court's precedence. There's also an adversarial way that they could have done it, and that is to institute a cancellation proceeding or a partial cancellation proceeding under either Section 14 or 18. And then that would be a situation where the owner of the prior registration could actually appear and defend the full scope of what its registration was if it had the evidence to do that. Can they? I'm going to assume that, I guess, Vibrant isn't in the dental implant business and isn't the owner of the original dental implant prevail mark. Could Vibrant institute a cancellation proceeding against, I guess, the prevail people asserting its invalidity in light of the dental implant prevail mark? Do they have standing to do that? That would be a good question, Your Honor. I'm not sure that that particular ground would be a valid ground to cancel or partially cancel the dental implant, the first registration. I don't know that I want to take a solid position on that because I haven't thought about that, Your Honor. Mr. Cassidy, I don't remember seeing anything in the record suggesting they attempted to do either of those. Is that correct? That's correct, Your Honor. There's nothing in the record about them attempting either. Then I would just make the point that that is still something that they could do now. The fact that we're up here arguing about this final refusal does not preclude them from going to the prior registrant and saying, do you mind if we get this registration or instituting a partial cancellation proceeding against them. On whatever grounds they could gin up. Yes, exactly. Whatever grounds they think are valid grounds to do that. No, no. In your sentence, the prior registrant, is that peak prevail people or the dental people? The peak prevail people because the dental implant was initially asserted as a bar to registration, but it was ultimately withdrawn, so it's not actually an issue. In the registration of this one? Yes, in the registration of this particular one. Was there a contest over registration of peak prevail? I don't know if there was, Your Honor. What I wanted to point out was the TKD does have two, I don't know if you need to call them exceptions, or two situations that they think, or one situation they think is outside the scope of the Dixie restaurant directive. But in the case of Trackmobile, what they said was that was a case where they will take extrinsic evidence if they find that the goods description in the cited registration is vague or unclear. And they very sensitively, I think, applied that exception or that circumstance that's outside Dixie restaurants to make sure that they do that, not when something's broad but clear, but when something truly is not understandable to someone who's not in a particular industry. And they looked very carefully at the argument that Vibrant made here and found that this was not a situation that fell within that particular exception because it was very clear what surgical implants comprised, and it's just clear but broad. So here what you have is really a Dixie restaurants type situation that they could have fixed some other way or addressed some other way. One thing that I wanted to point out was, and I think you touched on it earlier, was that the declarations that they put and the other evidence in the record does not actually say that PEAK, the material PEAK, is not used in specialties other than orthopedics. There was a Wikipedia reference saying that it was used in medical implants and neither the bariatric doctors nor the orthopedic doctors who did the declarations said that it is not used outside of orthopedics. So I think it's a pretty big leap to go from saying something is known in orthopedics to saying that's the only place that it's used. Why doesn't the sophistication of the purchasers and the level of education and particularity of the purchasers trump everything else, or at least why isn't that entitled to more weight than the board allowed? The board did give it weight and certainly there is evidence in the record here that the purchasers are quite sophisticated. And not likely, I mean no one can concede that they would mistake the implant or something for weight loss as some other device, right? Right, and that's true. What's wrong in these particular circumstances? Why isn't that sufficient to trump all the other stuff? The discourse precedents have made clear that the issue really isn't whether or not the customers at issue would mistake what the goods are. The question is really whether they would mistake where these goods are coming from. And when you have a mark like PEAK prevail, where PEAK means a particular, it's a descriptive term that describes what the product is made of, that doesn't have really any source identifying significance. And so this would be perhaps a different case if it was Agilent prevail, where the word Agilent was a source identifier. And then there probably wouldn't be any source identification problem. But here, there's nothing about the word PEAK that tells you who it's coming from.  might well think that these two products come from the same company. One is made of PEAK and it's for orthopedics, and one is made of, you know, not made of PEAK, made of something else, and it's for bariatric. You might even, I mean, even in the, what did you say, Agilent? Agilent, I was just making up a company name. I mean, even in that there might be confusion, right? The bariatric doctor is having lunch with his orthopedics friend and says, I just got a visit from this company and here's the product. And the orthopedist says, oh, I've got a product. They make good stuff. I think, I'm not saying that there would never be confusion in that sort of a case. I'm using it to sort of point out that a company name has more source identifying significance than a material out of which the product is made. And so there would be less of a likelihood of confusion in that instance. And if your honors have no further questions. Thank you. Ms. Piattini, the board following up on Mr. Casagrande's comments, the board recognized that the sophistication of the purchaser was a significant argument against confusion, but then made the comment that it was the breadth of your claim for your trademark, applied for a trademark, that troubled them. Specifically, they said, I'm looking at page 16 and 17 of the board's opinion. They start out saying the similarity between the marks and the goods, as well as the presumption that the goods move in the same trade channels, are sold to the same class of purchasers, weigh in favor of a finding of a likelihood of confusion. They then go on to point out that the sophistication of purchasers weighs against it. But then they say on 17, we conclude that purchasers familiar with registered surgical implants comprising artificial material sold under the mark peak prevail would be likely to mistakenly believe, upon encountering applicants similar mark prevail for, quote, medical devices, namely abdominal implants and delivery systems, therefore, that the goods originate from or are associated with or are sponsored by the same entity. Seems to suggest that you could have narrowed the area in which you were going to use your applied for a trademark and you might have had a different case, but perhaps not. No, because they're saying anything that falls within the umbrella of the surgical implant that peak prevail covers it. So anything with the word, so the import of the decision is any word, any mark with the word prevail in it that is for any type of surgical implant cannot be registered as long as peak prevail stays registered on the principal register or supplemental. And that's why the dental implant troubles you. Absolutely, and it totally undercuts the board's position that prevail is the dominant part of the peak prevail mark. It certainly cannot be. And it undercuts the board's position that prevail and peak prevail are similar in sound, meaning, and appearance. You do appreciate that we occasionally get cases up here in which the board, one board opinion is in conflict with an earlier board opinion and we just deal with the most recent one. No, I understand that, and what I'm hearing is that there's going to be, just my take on this argument today, there's going to be an affirmance of the board's position, and I'm troubled by that because it goes against prior precedent of the CCPA, which is, and that's in the Industrial Nucleonics Corporation versus Hine case, and in the Alpha Corporation versus the CBS case. If you get a difference in the trademarks and a sophistication of the customers, it makes likelihood of confusion unlikely. And everyone seems to be ignoring the importance of the word peak and peak prevail. Clearly, it was important enough to allow the registration of peak prevail over prevail for dental implants. And it also improperly changes the mark. The customers, the physicians who are getting contacted by a vendor to sell this product, don't just hear prevail. They hear and see peak prevail, and that goes against the Vargas Girl case of this court, of the Federal Circuit. So, I mean, there's nothing more we as trademark practitioners can do than what we did in this case in terms of submitting evidence of the sophistication of the customers and other things to show that this mark should be registered. There has to be some reality in terms of registering trademarks. I know that they are bound by the identification of goods, but they have two exceptions to the rule that they chose to ignore in this instance. We submitted extrinsic evidence to clarify the nature of surgical implants because, quite frankly, a surgical implant can be a staple. It can be any device whatsoever to put in your body. It's a little bit, I was thinking about it coming over here, it's a little bit about saying food. Okay, what kind of food? If someone has a registration for food that includes one mark, then nobody else can get a registration for any kind of food that has that same word in it. You're effectively granting the prior registrant a right in gross over that word. I suppose it would also possibly include implants for cataract surgery or something like that. Anything at all. We haven't voted yet, so I don't want you to go home unduly discouraged. I'm very blunt. It's part of my nature, so I figured I'd put it out there. And on that note, we thank the parties the case was submitted that concludes our proceedings for this morning.